# WATTS *v.* TIBBALS.

A. purchased from B. the right to quarry and remove certain stone for the purpose of constructing certain locks, the quantity to be estimated in the locks, and paid for at forty cents per perch, when the canal contractors should be paid.   A. has a property in the stone quarried by him for the purpose of delivery under his agreement with the canal contractors, which may be sold by the sheriff.

In error from the Common Pleas of Erie county.

*Sept.* 27.   Trespass.—Vansise made a written agreement with Sandford, by which he was to be permitted to raise and remove stone from Sandford's quarry for two locks in the canal : "say one thousand perches, the exact quantity to be ascertained by measurement in the locks," the price being forty cents per perch, payable as soon as the contractors were paid.

Vansise having got out a quantity of the stone, it was levied

upon while in the quarry, under an execution against him, and sold to Tibbals and Clark.

The defendants, Watts and others, claiming under the canal company, which had paid Sandford for the stone, having taken it away four years after the sale to plaintiffs, this action was brought by Tibbals and Clark; and the only question in this court was, whether the ruling of the learned judge was correct as to Vansise having such a property as could be sold under an execution.

His honour (CHURCH, P. J.) instructed the jury, that if the stone was got out for the use of the locks, Vansise had a property in them for the purpose of delivering under his contract for the canal, and that such right might be sold.

*Babbitt* and *Sill*, for plaintiff in error.—The property remained in Sandford, at all events he had the possession, which he could retain until paid : McDonald *v.* Hewitt, 15 Johns. 349 ; Pritchett *v.* Jones, 4 Rawle, 260 ; Scott *v.* Wells, 6 Watts & Serg. 357; Strodes *v.* Caven, 3 Watts, 258. The right of Vansise, whatever it was, was forfeited by his laches, and the canal company might well purchase them from Sandford.

*Walker* and *Galbraith*, contrà.—The stone became the property of Vansise as soon as quarried, since the vendor agreed to wait until a future time for payment. Having thus vested, the title might well be sold under an execution.

*Oct.* 8.  BURNSIDE, J.—The only question raised on this record is, whether Tibbals and Clark acquired a right to the stone in question, by virtue of the constable's sale. Sandford owned the quarry on the bank of Lake Erie, and contracted with Vansise as follows :

" Agreement made 1st October, 1840, between Giles Sandford and David Vansise. Said Sandford permits said Vansise & Co., and they agree to dig, raise and *remove* from said Sandford's quarry on the bank of Lake Erie, (the same quarry formerly worked by Sherwood,) stone for the two outlet locks on the Pennsylvania canal, say one thousand perch, *the exact quantity to be ascertained by measurement in the locks.* Said Vansise agrees to pay said Sandford forty cents per perch as the stone are quarried, *at least as soon and as often as payments are made to the contractors on the canal.*

" Signed,                             GILES SANDFORD,
                                      DAVID VANSISE."

The stone in question was quarried, and at the mouth of the

quarry, when the state abandoned the Erie Extension. They were levied on and sold to the plaintiffs below, on a judgment and execution against Vansise, and purchased by the plaintiffs in the execution. The substance of the second and third points is, that this sale vested no right or title in the purchasers. The court answered that the contract contained mutual covenants. That Vansise's permit was for locks 70 and 71, and Sandford was to be paid as often as payments were made to the contractors on the canal. The permission was to quarry and remove. After a careful examination of the answer of the court to these points, we think the plaintiffs in error have no ground to complain. The quantity was to be ascertained by measurement in the locks, and paid for as the contractors received payment from the state. Vansise had a right to remove the stone. Sandford was to be paid when the stone was measured in the locks. By this written agreement Sandford trusted to the personal responsibility of Vansise. A perch of stone on the beach of the lake, where they were thrown from the quarry, would seem from the evidence to be worth between two and three dollars. The charge on this point was more favourable to the defendant than the evidence warranted.                              Judgment affirmed.